**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| GARY SMITH, | Case No. 1:17-cv-839 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Gary Smith filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In June 2014, Plaintiff filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) alleging a disability onset date of June 4, 2014, due to physical impairments relating to a jet skiing accident. (Tr. 246-252, 253-258). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On February 1, 2017 ALJ Joseph Vallowe held a video hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. On February 17, 2017, the ALJ denied Plaintiff's application in a written decision. (Tr. 10-22). Plaintiff now seeks judicial review of the denial of his application for benefits.

1

Plaintiff was born in 1976 and was 38 years old on the date of his alleged date of disability. (Tr. 23-24). He had a high school education, and past relevant work as a car rental clerk, parts sales person, bike rental clerk and pool cleaner. (Tr. 75). He alleges disability due to neck and low back injuries he sustained in a high-speed jet ski accident which occurred on July 7, 2012 when he was living in South Carolina.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical and lumbar spine with hernication and nerve root compression." (Tr. 12). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> No more than 15 minutes standing/walking at a time and no more than 45 minutes at a time seated; frequent bilateral foot controls; frequent bilateral hand controls; no overhead reaching bilaterally; frequent handling and fingering bilaterally; occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing and stooping; no kneeling, crouching, or crawling; and no hazards such as unprotected heights, moving mechanical parts, or operating a motor vehicle commercially.

(Tr. 15). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is unable to perform his past relevant work. Nonetheless, there are jobs that exist in significant numbers in the national economy that he can perform, including such jobs as food and beverage order clerk, charge account clerk, and document preparer. (Tr. 22). Accordingly, the ALJ determined that Plaintiff is not under

disability, as defined in the Social Security Regulations, and is not entitled to DIB or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) improperly weighing the opinion evidence; and 2) relying on a hypothetical question that did not accurately portray his impairments. Upon close analysis, I conclude that none of the asserted errors require reversal or remand.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole.

3

*Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she

4

suffered impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is substantially supported**

*1. Evaluation of Opinion Evidence*

Plaintiff's first assignment of error asserts that the ALJ's RFC assessment is not substantially supported because he improperly weighed the opinion evidence. In this regard, Plaintiff contends that the ALJ erred in assigned considerable weight to the findings of the state agency physicians and by giving little weight to the opinion of Plaintiff's treating physicians.

Here, the record contained the following opinion evidence:

In August 2014, state agency reviewing physician, Tom Brown, M.D., opined that Plaintiff could perform light work with certain postural and environmental limitations. (Tr. 100-03).

In February 2014, state agency reviewing physician, Elaine Lewis, M.D., opined that Plaintiff could perform light work with certain postural and environmental limitations. (Tr. 151-54).

In October 2014, Dr. Brosman, a pain management specialist, opined that Plaintiff "[could not] work for up to 24 months." (Tr. 638).

In January 2017, Dr. Danko, Plaintiff's treating physician, completed a form where he provided diagnoses of a disc herniation at one level of Plaintiff's neck with radiculopathy, mild canal narrowing and degeneration at the same level, and degeneration at two levels of Plaintiff's lower back. (Tr. 908). Dr. Danko opined that

5

Plaintiff had moderate limitations using his hands and arms, could sit for four hours of an eight-hour workday, stand/walk for one hour, lie down/recline for three hours, occasionally lift up to five pounds, and that Plaintiff was frequently distracted by pain, especially with neck movements. (Tr. 908-09). Dr. Danko also filled out a questionnaire where he noted evidence of nerve root compression at one level, diminished range of motion in Plaintiff's neck, sensory deficits at one level, positive straight leg raising, but no motor loss, atrophy, or muscle weakness. (Tr. 862).

In formulating Plaintiff's RFC, the ALJ afforded considerable weight to the state agency medical consultants, Drs. Brown and Lewis. In so concluding, the ALJ noted that their opinions were consistent with the record as a whole including the objective medical evidence, clinical findings on examination and course of treatment. (Tr. 19). The ALJ assigned little weight to Dr. Brosman's opinion, because it was not supported by an explanation, was speculative, and conclusory. (Tr. 19). Next, the ALJ assigned partial weight to the "Listing 1.04 Questionnaire" completed by Dr. Danko in January 2017. However, the ALJ assigned little weight to Dr. Danko's physician report. The ALJ determined that Dr. Danko's extreme limitations were inconsistent with Plaintiff's ability to drive and live alone and was based on Plaintiff's subjective complaints. (Tr. 20).

Plaintiff argues that the ALJ failed to give good reasons for discounting Dr. Danko's opinions and improperly played doctor in evaluating his findings. Plaintiff further asserts that the ALJ failed to accord proper weight to Dr. Williams' report. Plaintiff's assertions will be addressed in turn.

In evaluating the opinion evidence, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment

6

relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)). Upon careful review and as explained below, the undersigned finds, that the ALJ's evaluation of the opinion evidence comports with Agency regulations and controlling law.

A treating medical source's opinion is entitled to controlling weight only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *See Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); 20 C.F.R. § 404.1527(c)(2). If the ALJ declines to give controlling weight to a treating source's opinion, the ALJ will determine the weight to attribute to the opinion based on a number of regulatory factors. 20 C.F.R. § 404.1527(c)(2). These factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2)). The regulations "expressly require only that the ALJ's decision include 'good reasons'" for the weight given to the treating source's opinion, "not an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).

Here, the ALJ gave several good reasons for discounting Dr. Danko's opinions.

7

As noted by the ALJ and the Commissioner, Dr. Danko's extreme limitations, including limiting Plaintiff to one hour of standing/walking in an eight-hour day and limiting Plaintiff to lifting no more than five pounds occasionally, are inconsistent with substantial evidence in the record. (Tr. 20). In this regard, the ALJ noted that a nerve study performed on Plaintiff in early 2015 of Plaintiff's legs and back was completely within normal limits; the study showed no evidence of irritability, motor dysfunction, neuropathy, or radiculopathy in Plaintiff's back or legs. (Tr. 17 (citing Tr. 671)). Further, the ALJ's decision expressly outlined Plaintiff's treatment history from 2014 to 2017 and cited numerous examples of Plaintiff's exhibiting normal gait and normal sensation, motor strength, and deep tendon reflexes in his arms and legs – objective findings that do not support a complete inability to perform all work. (Tr.18-19 (citing Tr. 540, 543, 637, 863-65, 869, 873, 877- 78, 881-82, 885-86, 888-90, 897-98, 905, 901-02)). See *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006) (ALJ's reason to not credit the treating physician's opinion because his "conclusions were not well supported by the overall evidence of record and were inconsistent with the other medical evidence of record" was an adequate explanation). Further, the ALJ pointed out that Plaintiff regularly exhibited negative straight leg raises. (Tr. 18 (citing 540, 543, 637, 905)).

Moreover, the ALJ reasonably discounted Dr. Danko's opinions regarding Plaintiff's "extreme" limitations as they were inconsistent with Plaintiff's activities of daily living. (Tr. 20). As noted by the Commissioner, the Sixth Circuit has found that when an ALJ carefully summarizes the results of the claimant's objective medical records, as well as notes the daily activities of the claimant, and then shows the opinion of the treating source was inconsistent with these facts, the decision to discount the weight given a

8

treating source is supported by substantial evidence. *Dyer v. Social Sec. Admin.*, 568 F. App'x 422, 426-28 (6th Cir. 2014). The ALJ's decision clearly indicates that he thoroughly summarized and analyzed Plaintiff's treatment history from 2014 to 2017 including, numerous examples of Plaintiff exhibiting normal gait and normal sensation, motor strength, and deep tendon reflexes in his arms and legs. (Tr.18-19 (citing Tr. 540, 543, 637, 863-65, 869, 873, 877-78, 881-82, 885-86, 888-90, 897-98, 905, 901-02)). The ALJ also properly observed that Plaintiff's ability to drive, manage his finances, and live alone, when considered in conjunction with the medical evidence set forth above was incongruent with the extreme limitations set forth by Dr. Danko and discounted his opinion accordingly. (Tr. 13-14, 20 (referring to Tr. 36, 299, 587)).

For these reasons, the ALJ's evaluation of Dr. Danko's findings was done in accordance with Agency regulations and controlling law.

Additionally, the ALJ properly weighed Dr. Williams' opinion. As noted above, in May 2016 Dr. Williams opined that Plaintiff was "unable to work for up to the next 48 months due to his spine injury." (Tr. 19 (citing Tr. 684)). The ALJ found that Dr. Williams's opinion was not appropriately supported by the record and drew conclusions reserved for the Commissioner. 20 C.F.R. § 404.1527(c)(3). The ALJ also noted that this opinion was speculative in duration and not supported by any explanation. (Tr. 19 (citing Tr. 684)). It is proper for an ALJ to discount the opinion of a treating physician where the opinion is conclusory, fails to provide any data or laboratory findings to support the claim, and fails to identify clinical data or otherwise explain why his examinations led him to opine on a claimant's limited physical capabilities. *Duncan v. Comm'r of Soc. Sec.*, 2014 WL 4829469 at *11 (S.D. Ohio Sep. 29, 2014).

More importantly, Plaintiff has not explained how it was unreasonable for the ALJ to rely on this evidence in discounting Dr. Williams's opinion. Here, Plaintiff simply states the ALJ erred in discounting Dr. Williams's opinion because Dr. Williams "recalled" that Plaintiff walked awkwardly with the assistance of a cane and considered Plaintiff "to be sincere and credible." (Pl. Br. 7 (citing Tr. 825)). However, as detailed by the ALJ, Dr. Williams's own treatment notes contain no mention of Plaintiff walking or using a care, and, further, that Dr. Danko consistently documented that Plaintiff's gait was normal. (Tr. 19 (citing Tr. 690, 704, 726, 740, 753, 768, 779, 790, 806 and referencing Tr. 863-65, 869, 873, 877-78, 881-82, 885-86, 888-90, 901-02, 905)). *Price v. Comm'r of Soc. Sec.,* 342 F. App'x 172, 175-76 (6th Cir. 2009) ("Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion.").

Last, the ALJ properly considered the opinions of Dr. Brown and Dr. Lewis, the state agency medical consultants in light of the objective medical evidence. The assessments of the reviewing physicians – limiting Plaintiff to lifting/carrying 20 pounds occasionally and 10 pounds frequently, standing/walking for a total of four hours and sitting for six hours, along with postural restrictions were consistent with the objective medical evidence. In support of this finding, the ALJ noted that the record contains nerve studies showing no evidence of irritability, motor dysfunction, neuropathy, or radiculopathy in Plaintiff's back or legs, x-rays showing no evidence of significant abnormality and no instability in Plaintiff's neck, normal gait, normal sensation, motor strength, deep tendon reflexes in Plaintiff's arms and legs, and negative straight leg raises. (Tr. 17-19 (citing Tr. 540, 543, 637, 671, 858, 863-65, 869, 873, 877-78, 881-82,

10

885-86, 888-90, 897-98, 905, 901- 02)); 20 C.F.R. § 404.1527(c)(4) (the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.).

The ALJ properly credited the reviewing physicians' opinions despite the submission of medical records following their review. To the extent that Plaintiff argues that the ALJ improperly weighed the consultants' opinions because they were entered "early on in the claim" is unavailing. (Pl. Br. 5). As noted by the Commissioner, the Sixth Circuit has explicated stated, there is "no categorical requirement that [a] non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (quoting SSR 96-6p); *Schwer v. Comm'r of Soc. Sec.*, 2017 WL 6375797 at *10 (S.D. Ohio Dec. 13, 2017). Moreover, as detailed above, the ALJ's decision shows that he reviewed the medical examinations that occurred following the medical consultants' review. Namely, the ALJ spent multiple pages discussing examinations, treatments, and testing results from 2015 through 2017 including detailed reviews of records submitted by Dr. Khan, Dr. Guanciale, Dr. Williams, and Dr. Danko. (Tr. 17-20). *See McGrew v. Comm'r of Soc. Sec.*, 343 Fed. App'x 26, 32 (6th Cir. 2009) ("It is clear from the ALJ's decision, however, that he considered the medical examinations that occurred after [the state agency physician's] assessment . . . and took into account any relevant changes in [claimant's] condition.")

Here, the ALJ fulfilled his duty to resolve the conflict between the disparate opinions of the state agency reviewing physicians and Plaintiff's treating physicians. *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (ALJ has "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and

11

weighing the credibility of [the claimant's] subjective complaints"); *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x. 369, 373 (6th Cir. 2006) ("The ALJ [has] the duty to resolve conflicts in medical evidence."). Although Plaintiff may disagree with the ALJ's weighing of the medical opinion evidence, the ALJ fulfilled his duty to resolve the conflict between these disparate opinions. *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x. 369, 373 (6th Cir. 2006) ("The ALJ [has] the duty to resolve conflicts in medical evidence.").

*2. Hypothetical Questions*

Plaintiff's second assignment of error asserts that the ALJ's hypothetical questions to the vocational expert failed to adequately portray Plaintiff's impairments. Specifically, Plaintiff asserts that the ALJ's hypothetical questions relating to his need for a sit/stand option was ambiguous and was inconsistent with his RFC assessment. Plaintiff further contends that the ALJ erred in failing to utilize limits suggested by Dr. Danko regarding his use of his hands for handling, fingering, etc. and his ability to stay on task. (Pl. Br. 14-15). Plaintiff's assertions are unavailing.

The Sixth Circuit has held that a hypothetical question must only include a claimant's credible impairments and limitations. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (emphasis added); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). As properly outlined by the Commissioner, the RFC formally limits Plaintiff to "no more than 15 minutes standing/walking at a time and no more than 45 minutes at a time seated." (Tr. 15). Thereafter, the ALJ explained that he was limiting Plaintiff to a "sedentary [RFC] with change of position and limited standing/walking and sitting." (Tr. 19). Moreover, as explained above, the ALJ properly determined that Dr. Danko's extreme limitations were not entitled to deference. Here, the ALJ's hypothetical

12

question was supported by the medical record and other evidence, and Plaintiff has not shown that he had limitations greater than those reflected in the ALJ's hypothetical question and eventual RFC finding.

Accordingly, the ALJ's decision is substantially supported in this regard.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| GARY SMITH, | Case No. 1:17-cv-839 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).